**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MACISTE COLEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) 17-1527(EGS) |
| ANN MARIE CLARK and PURDUE | ) |
| UNIVERSITY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Maciste Coleman and defendant Ann Marie Clark collided when Professor Clark made an illegal right turn while driving in the District of Columbia. Mr. Coleman claims that he was injured in the accident and filed this lawsuit alleging that Professor Clark was negligent and that her employer, Purdue University, should be held vicariously liable. Pending before the Court is defendants' motion to dismiss Mr. Coleman's complaint on the ground that the claims are barred by Indiana's sovereign immunity. Upon consideration of defendants' motion, the response and reply thereto, and the applicable law, the Court **GRANTS** defendants' motion and dismisses plaintiff's complaint.

**I.  BACKGROUND**

On August 28, 2014, Mr. Coleman was operating his motorcycle in the right lane going southbound on 23rd Street NW

toward Constitutive Avenue in the District of Columbia. Compl. ¶ 5, ECF No. 1-1 at 8. Mr. Coleman alleges that defendant Ann Marie Clark, a professor at Purdue University, made an illegal right turn that caused her to collide with Mr. Coleman. *Id.* ¶¶ 6-7, ECF No. 1-1 at 8. Officers from the National Park Service arrived at the scene and spoke with the parties. *See* Defs.' Mot. to Dismiss Ex. 1, ECF No. 9-1. The Motor Vehicle Traffic Accident Report filed by the National Park Service indicates that Professor Clark was issued a citation for the accident. *Id.*, ECF No. 9-1 at 3. The report further specifies that, while there was damage to the right side of Mr. Coleman's motorcycle, "[n]o injuries were reported." *Id.*

Less than two weeks after the accident, Mr. Coleman's attorney sent a letter to JFW Specialty Co., the third-party claims adjuster handling claims against Purdue. *See* Defs.' Mot. to Dismiss Ex. 2, ECF No. 9-2. The subject line of the attorney's letter stated that the "Insured" in the matter was "Purdue University." *Id.* The letter further indicated that Mr. Coleman had suffered "injuries" but did not specify the nature or severity of the injuries. *Id.* Mr. Coleman's attorney sent three additional letters to JFW between July 2015 and April 2017. *See* Defs.' Mot. to Dismiss, Exs. 3-5, ECF No. 9-3, 9-4, and 9-5. These letters were addressed only to JFW and did not copy anyone at Purdue or the State of Indiana. *See id.*

On June 30, 2017, Mr. Coleman filed suit in the Superior Court of the District of Columbia against Professor Clark for operating her vehicle "in a negligent, careless and reckless manner." Compl. ¶ 8, ECF No. 1-1 at 8. Mr. Coleman's complaint also included a respondeat-superior claim against Purdue. *Id.* ¶¶ 5-18, ECF No. 1-1 at 8-10. Mr. Coleman asserts that, as a result of the accident, he "was violently knocked and thrown about, sustaining severe, painful and permanent injuries to his body as well as severe and protracted shock to his nervous system." *Id.* ¶ 10. Mr. Coleman seeks compensatory damages in the amount of $850,000 for the injuries he sustained as a result of defendants' purported negligence. *Id.* ¶¶ 14, 18.

Defendants removed this case on July 28, 2017 based on diversity jurisdiction. *See* Defs.' Notice of Removal, ECF No. 1. Defendants subsequently filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Mr. Coleman's suit is barred by Indiana's sovereign immunity. *See* Defs.' Mot. to Dismiss, ECF No. 9. Defendants' motion is ripe for the Court's adjudication.

## II. LEGAL STANDARD

"A federal district court may only hear a claim over which it has subject-matter jurisdiction; therefore, a Rule 12(b)(1) motion for dismissal is a threshold challenge to a court's jurisdiction." *Gregorio v. Hoover*, 238 F. Supp. 3d 37, 44

(D.D.C. 2017) (internal citation and quotation omitted). To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing that the court has jurisdiction by a preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Because Rule 12(b)(1) concerns a court's ability to hear a particular claim, the court must scrutinize the plaintiff's allegations more closely . . . than it would under a motion to dismiss pursuant to Rule 12(b)(6)." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011) (internal citations omitted). In so doing, the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, but the court need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001). In reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court "may consider materials outside the pleadings" in determining whether it has jurisdiction to hear the case. *Jerome Stevens Pharm., Inc. v. Food and Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### III. ANALYSIS

Defendants argue that Mr. Coleman's claims against a state university and a state employee are barred by Indiana's sovereign immunity. Although Indiana waives it sovereign

immunity in certain circumstances — including when its agent
negligently causes a motor-vehicle collision, *see State v.
Turner*, 153 Ind. App. 197, 199 (1972) — an individual bringing
suit against the state must satisfy certain statutory
prerequisites prior to filing an action. Defendants assert that
Mr. Coleman failed to meet the statutory requirements here by,
among other things, not providing prompt notice of his claims as
required by the Indiana Tort Claims Act. Defendants urge the
Court to apply the Indiana Tort Claims Act based on the
principle of comity.

"[W]hen a federal court exercises diversity . . .
jurisdiction over state-law claims, 'the outcome of the
litigation in the federal court should be substantially the
same, so far as legal rules determine the outcome of a
litigation, as it would be if tried in a State court.'" *Felder
v. Casey*, 487 U.S. 131, 151 (1988) (quoting *Guaranty Trust Co.
v. York*, 326 U.S. 99, 109 (1945). In this diversity action,
then, the Court must first determine whether District of
Columbia courts would apply Indiana's notice-of-claim provision

on the basis of comity.[1] As explained more fully below, the Court finds that District of Columbia would apply Indiana's notice provision, that Mr. Coleman failed to provide sufficient notice as required by that law, and that Mr. Coleman's claims against Professor Clark cannot stand.

**A. Comity Requires the Application of Indiana Law**

"Comity principles ensure that foreign law that does not conflict with the law of the forum state may be applied to foster cooperation between sister jurisdictions." *Solomon v. Supreme Court of Fla.*, 816 A.2d 788, 790 (D.C. 2002). The District of Columbia Court of Appeals has explained that the presumption "'that the States intended to adopt policies of

---

[1]     The parties have not addressed whether choice of law principles are relevant to the Court's decision whether to recognize Indiana's immunity rules under principles of comity. Indeed, the intersection between choice-of-law principles and the common-law doctrine of comity is unclear. *See Briscoe v. Arlington County*, 738 F. 2d 1352, 1360 (D.C. Cir. 1984) ("District of Columbia courts have not expressly considered whether choice of law principles are relevant, as a matter of D.C. law, to the decision whether to recognize a sister state's immunity rules."). The *Briscoe* court declined to resolve the question, instead finding that it was "one that the District of Columbia Court of Appeals should properly resolve in the first instance." *Id.* Although the Court has not found any District of Columbia cases directly addressing the relationship between choice-of-law and comity, the District of Columbia Court of Appeals has found that comity required application of a sister state's immunity rules without doing a choice of law analysis. *See Solomon v. Supreme Court of Florida*, 816 A.2d 788 (D.C. 2002). Accordingly — and for the additional reason that both parties agree that District of Columbia law applies to this action — the Court declines to do a choice of law analysis here.

broad comity toward one another'" applies "equally to the District of Columbia." *Id.* (quoting *Hall*, 440 U.S. at 425). In *Solomon*, the Court of Appeals upheld "the absolute immunity of the Florida Bar and its agents for conduct related to their performance of disciplinary functions, conducted in the District of Columbia, where equivalent District bar disciplinarily agents would be entitled to such immunity in [D.C.] courts." *Id.* at 789-90. In so doing, the Court of Appeals explained that "the District of Columbia courts ***should***, on principles of comity 'as a matter of harmonious interstate relations,'" apply the immunity of sister' states in cases where the District would also be entitled to immunity. *Id.* (quoting *Nevada v. Hall*, 440 U.S. 410, 422 (1979)) (emphasis added).

Consistent with these principles, the Court finds that, although not constitutionally required to do so, *see Nevada v. Hall*, 440 U.S. 410 (1979), District of Columbia courts "should" recognize the sovereign immunity of a sister state so long as the other state's rules are sufficiently harmonious to those governing the District's immunity in District of Columbia courts. Accordingly, the Court must examine whether Indiana's requirement that, in order to overcome sovereign immunity, a plaintiff with a claim against the state must provide notice is consistent with District of Columbia law.

In pertinent part, the Indiana Tort Claims Act provides:

> [A] claim against a political subdivision is
> barred unless notice is filed with: (1) the
> governing body of that political
> subdivision; and (2) the Indiana political
> subdivision risk management commission . . .
> within one hundred eighty (180) days after
> the loss occurs.

Ind. Code. § 34-13-3-8. Like Indiana law, District of Columbia law also requires an individual to file a notice of claim for suits against the District of Columbia:

> [A]n action may not be maintained against
> the District of Columbia for unliquidated
> damages to person or property unless, within
> six months after the injury or damage was
> sustained, the claimant, his agent, or
> attorney has given notice in writing to the
> Mayor of the District of Columbia of the
> approximate time, place, cause, and
> circumstances of the injury or damage. A
> report in writing by the Metropolitan Police
> Department, in regular course of duty, is a
> sufficient notice under this section.

D.C. Code § 12-309. In most relevant aspects, Indiana and the District of Columbia's notice provisions are the same:

- They both impose a similar time limit. *Compare* Ind. Code § 34-13-3-8(a) (requiring notice "within one hundred eight (180) days after the loss occurs"), *with* D.C. Code § 12-309(a) (requiring notice within "six months after the injury or damage was sustained").

- They both require the notice to be in writing. *Compare* Ind. Code § 34-13-3-12 (requiring notice to "be in writing"), *with* D.C. Code § 12-309(a) (notice must be "in writing").

- They both require delivery of the notice to a specified governmental office. *Compare*

8

> Ind. Code § 34-13-3-8 (requiring notice to "the governing body of th[e] political subdivision and the Indiana political subdivision risk management commission") *with* D.C. Code § 12-309(a) (requiring notice "to the Mayor of the District of Columbia").[2]

Moreover, both notice provisions are grounded in the same policies of ensuring that the government has an adequate opportunity to investigate claims and to protect the public treasury. *Compare George v. Dade*, 769 A.2d 760, 765 (D.C. 2001) (purpose of the notice of claim provision is "to ensure adequate opportunity for investigation to determine facts, and to protect District revenues against unreasonable claims"), *with Harrison v. Veolia Water Indpls., LLC*, 929 N.E.2d 247, 253 (Ind. Ct. App. 2010) (explaining that the notice provision is designed "to permit prompt investigation of claims" and "one of the main concerns [the Indiana Tort Claims Act] intended to address clearly was protection of the public treasury") (citation omitted).

Mr. Coleman rejects the conclusion that the two notice provisions are substantially similar, pointing out that

---

[2] While Indiana law provides that a "political subdivision" for purposes of the statute includes a "state educational institution," Ind. Code § 34-13-3-8, the District of Columbia does not allow its political subdivisions to be sued at all, instead requiring a plaintiff to bring suit against the District itself, *see Younger v. D.C. Pub. Sch.*, 60 F. Supp. 3d 130, 142 (D.D.C. 2014).

defendants' "completely ignore[] D.C. Code § 12-309's statutory exception of notice for accidents involving a police report." Pl.'s Opp., ECF No. 14 at 10. Section 12-309 of the D.C. Code provides that "[a] report in writing by the Metropolitan Police Department" is sufficient notice for purposes of the section. This exception to the traditional notice requirement stems from "the idea that written notice by a claimant should not be a prerequisite to legal action if, in fact, *actual notice* in the form of a police report has been received by the District." *Allen v. Dist. of Columbia*, 533 A.2d 1259, 1262 (D.C. 1987). A police report satisfies the notice requirement if it contains "information as to time, place, cause and circumstances of injury or damage with at least the same degree of specificity required of a written notice." *Id.* The inquiry in determining whether a police report is sufficient is whether "the District should have anticipated, as a consequence of receiving the police report, that a complaint . . . would be forthcoming." *Id.*

Here, the police-report exception does not save Mr. Coleman's case. For starters, the accident report in this case was not "by the Metropolitan Police Department" as required by the statute, but by the National Park Police. *See* Defs.' Mot. to Dismiss Ex. 1, ECF No. 9-1. Even if a report by a different agency would suffice — and the Court is doubtful it would, *see Campbell v. Dist. of Columbia*., 568 A.2d 1076, 1078 (D.C. 1990)

— it is undisputed that the report in this case states that "[n]o injuries were reported." *See* Defs.' Mot. to Dismiss Ex. 1, ECF No. 9-1 at 3.[3] Mr. Coleman points to *Plater v. Dist. of Columbia Dept. of Transportation*, 530 F. Supp. 2d 101 (D.D.C. 2008), to argue that the report is nonetheless sufficient to provide defendants "all the information they needed, and were entitled to, from the police report." Pl.'s Opp., ECF No. 14 at 15. In *Plater*, the court found that the police report was sufficient to provide notice where it stated that plaintiff "fell on some glass and hit his head on the ground" and "suffered some laceration to the back of his head." 530 F.Supp.2d at 106. Here, however, the National Park Police report specifically **disclaims** any injuries. *See* Defs.' Mot. to Dismiss Ex. 1, ECF No. 9-1 at 3 (stating "[n]o injuries were reported").

Moreover, there are no allegations that Mr. Coleman later provided any information about his purported injuries within the statutory period. *See Miller v. Spencer*, 330 A.2d 250, 252 (D.C. 1974) ("While the Code permits a police report to suffice as

---

[3]    Although the police report does state that the right side of Mr. Coleman's motorcycle was damaged, *see* Defs.' Mot. to Dismiss Ex. 1, ECF No. 9-1 at 3, Mr. Coleman's lawsuit is not primarily based on allegations of property damage, but rather on allegations of personal injury. *See* Compl. ¶¶ 10-11, ECF No. 1-1 at 8 (alleging that he was "violently knocked and thrown about, sustaining severe, painful and permanent injuries to his body as well as severe and protracted shock to his nervous system" and that he "incur[red] medical treatment and medical expenses for the aforesaid injuries").

notice of a claim in lieu of a written notice by the claimant, his agent or attorney, the police report must, when the facts are apparent, contain at least the substance of the same information required of a written notice. When it does not because no injuries are then apparent, it is the duty of the plaintiff to supply that additional information when it becomes apparent."). Accordingly, the Court concludes that the police-report exception does not render District of Columbia law inconsistent with Indiana law under the fact of this case. *See, e.g.*, *Aubin v. Dist. of Columbia*, 107 F. Supp. 3d 169, 173–74 (D.D.C. 2015) (where police report only described the circumstances of the arrest and did not describe any injury, finding "there was no reason whatsoever, on the basis of this police report, for defendant to have anticipated that a complaint by plaintiff was forthcoming").

Mr. Coleman also points to other salient differences between the Indiana Tort Claims Act and District of Columbia law: Indiana limits a claimant's recovery to $700,000, *see* Ind. Code Ann. § 34-13-3-4(a)(1)(C), whereas there is no cap on damages in the District of Columbia; and Indiana requires suits to be filed in its state courts, *see* Ind. Code Ann. § 34-13-3-5(f), while the District of Columbia does not have any such limitation. Mr. Coleman argues that these sorts of differences led another court in this district to decline to recognize the

immunity of a municipality. *See* Pl.'s Opp., ECF No. 14 at 10-11
(citing *Skipper v. Prince George's County*, 637 F. Supp. 638,
639-40 (D.D.C. 1986). In *Skipper*, the court found that
application of the immunity provisions relied on by Prince
George's County would violate the policies of the District of
Columbia in two ways: (1) by requiring a District of Columbia
resident who was injured in the District to bring suit in
Maryland; and (2) by limiting plaintiff's recovery to $250,000
for tort liability. *Skipper*, 637 F. Supp. at 640. Here,
however, Indiana's recovery limit and forum limitation have no
direct bearing on the Court's decision to apply Indiana's notice
provision, which is substantially similar to that of the
District's. Moreover, the *Skipper* court was confronted with an
immunity claim brought by a municipality and not a sister state
with whom the District should seek "harmonious interstate
relations." *Hall*, 440 U.S. at 426. Furthermore, the *Skipper*
court relied on choice-of-law principles in arriving at its
conclusion; here, the Court's inquiry properly ends after
resolution of the comity issue.

The Court finds further support for its conclusion that
District of Columbia would apply Indiana's notice provision in
view of the reliance, in part, by the District of Columbia Court
of Appeals on *Schoeberlein v. Purdue University*, 129 Ill.2d 372
(Ill. 1989), in analyzing principles of comity in its *Solomon*

decision. In *Schoeberlein*, the plaintiff sued Purdue for damages caused by a product that Purdue had sold to plaintiff's Illinois employer. *Id.* at 375. Purdue argued that it was immune from suit under the Indiana Tort Claims Act. Based on principles of comity, the Illinois Supreme Court agreed and affirmed the trial court's dismissal of the suit. *Id.* at 376. In so doing, the Illinois Supreme Court found that application of Indiana's sovereign immunity provision in the tort context would not contravene Illinois public policy because the Indiana and Illinois statutes were "[s]imilar." *Id.* at 380. For example, both statutes provided immunity for the state except where certain requirements were met, including imposing strict notice requirements and placing a cap on liability. *Id.* Therefore, plaintiff's remedy would have been similarly "limited" regardless of whether the Illinois or Indiana statute applied. *Id.* at 379. Here, too, both Indiana and the District of Columbia impose strict notice requirements. Although Indiana's cap on damages to $700,000 could limit Mr. Coleman's damages should he prevail, the Court finds this difference between Indiana and District of Columbia law is not so substantial as to render enforcement of Indiana's statute contrary to the District's public policy.

For all these reasons, the Court finds that the notice provisions of the District of Columbia and Indiana, as applied

14

to this case, are sufficiently harmonious such that the District of Columbia would apply Indiana's provision as a matter of comity.

    **B. Plaintiff's Claims are Barred Because He Did Not Substantially Comply with the Notice Provision of the Indiana Tort Claims Act**

The Indiana Tort Claims Act governs tort claims against governmental entities and their employees. *Oshinski v. N. Indiana* Commuter *Transp. Dist.*, 843 N.E.2d 536, 543 (Ind. Ct. App. 2006). Under the Act, a potential plaintiff's suit is barred "unless he or she complies with the notice requirements" set forth in the Act. *Id.* at 544. Those requirements provide that a plaintiff must file notice with "the governing body of [the political subdivision that is being sued]" and "the Indiana political subdivision risk management commission" within 180 days after the loss occurs. Ind. Code. § 34-13-3-8(a). The notice "must include the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim." *Id.* § 34-13-3-10. Although the notice requirement is phrased in mandatory language, Indiana courts "have held that substantial compliance with the notice provision will suffice when the purpose of the Act has been satisfied." *Parke Cty. v. Ropak, Inc.*, 526 N.E.2d 732, 737 (Ind. Ct. App. 1988). In this

regard, "the crucial consideration is whether the notice supplied by the claimant of his intent to take legal action contains sufficient information for the city to ascertain the full nature of the claim against it so that it can determine its liability and prepare a defense." *Schoettmer v. Wright*, 992 N.E.2d 702, 707 (Ind. 2013) (citation and internal quotation marks omitted).

Mr. Coleman concedes that he "failed to send written notice under the Indiana Tort Claims Act to the designated recipients within the 180 day timeframe" in this case. Pl.'s Opp., ECF No. 14 at 17. He further concedes that "his communications with the third party claims adjuster would not constitute substantial compliance under the Act." *Id.* Instead, he argues that defendants should be estopped from relying on Mr. Coleman's failure to comply with the Act's notice requirements because "they never informed Plaintiff that Defendant Clark was a government employee" and because he was unaware that "Purdue University was a state owned university." *Id.* at 17-18 (citing *Gregor v. Szarmach*, 706 N.E.2d 240, 243 (Ind. Ct. App. 1999)); *see also* Pl.'s Supp. Mem., Aff. of Danny R. Seidman, ECF No. 17 ¶¶ 6-7 (plaintiff's counsel averring that he "did not know that Purdue University was an Indiana state instrumentality," and that the claims adjuster never gave him "any reason to believe

that Defendants was [sic] covered by the Indiana Tort Claims Act").[4]

Under Indiana law, "[t]he party claiming equitable estoppel must show its '(1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially.'" *Schoettmer*, 992 N.E.2d at 709 (citation omitted). "Equitable estoppel will not apply against the State unless there is 'clear evidence that its agents made representations upon which the party asserting estoppel relied.'" *Id.* "The burden to produce that evidence rests upon the party claiming estoppel." *Id.*

Here, the letter from Mr. Coleman's counsel to JWF, which was sent less than two weeks after the accident, clearly stated that the "insured" was "Purdue University." Defs.' Mot. to Dismiss Ex. 2, ECF No. 9-2. Even if Mr. Coleman and his counsel

---

[4]     Six days after filing its memorandum in opposition to defendants' motion to dismiss, plaintiff filed a supplemental affidavit in support of his opposition. *See* Supp. Aff., ECF No. 17. The affidavit, which is signed by plaintiff's counsel, supports plaintiff's arguments that defendants should be estopped from relying on the notice provision in the defense of this suit. *See generally id.* Defendants moved to strike the affidavit as untimely and filed without leave of the Court. *See* Defs.' Mot. to Strike, ECF No. 18. In its discretion, and because there is no evidence that defendants were substantially prejudiced by the late filing, the Court will consider the supplemental affidavit in resolving defendants' motion to dismiss. The Court admonishes plaintiff's counsel to carefully read and comply with the federal and local rules in the future.

lacked actual knowledge that Purdue University is a state university, plaintiff has not shown that he did not have the "means of knowledge" to acquire that information. *See Schoettmer*, 992 N.E.2d at 709. After all, a simple search of "Purdue University" would have confirmed that it is a "public" institution. *See* Wikipedia, *Purdue University*, https://en.wikipedia.org/wiki/Purdue_University (last visited July 20, 2018) ("Purdue University is a **public** research university in West Lafayette, Indiana and is the flagship campus of the Purdue University system.").

Moreover, unlike the plaintiff in *Schoettmer*, who acted without counsel and who was told by the state's agent that it would "be in his best interest to wait until all his medical treatments were complete before settling his claim," Mr. Coleman was represented by counsel for nearly the entirety of the 180 day notice period and does not allege that JWF or defendants made any affirmative "representations" upon which he relied. In similar circumstances, other courts have declined to allow estoppel to bar a notice defense in a suit under the Indiana Tort Claims Act. *See Mills v. Hausmann-McNally, S.C.*, 55 F. Supp. 3d 1128, 1135-37 (S.D. Ind. 2014) (concluding that estoppel claim failed where party had "demonstrated neither that it lacked 'knowledge or the means of knowledge' that [individual] was the employee of a stage agency, nor that it

relied to its detriment on representations made by [the state agency] or its agent"). Simply put, Mr. Coleman has "not demonstrated that this is a case triggering the equitable doctrine's protective concern for those who have been misled and cannot reasonably be expected to discover the facts for themselves." *Mills*, 55 F. Supp. 3d at 1137.

## C. Plaintiff's Claim Against Professor Clark Is Also Barred Under Indiana Law

The Indiana Tort Claims Act bars suit against a state employee personally if the employee was acting within the scope of her employment. Ind. Code. § 34-13-3-5. Likewise, District of Columbia law provides that "no civil action . . . shall be brought or be maintained against an employee of the District for loss of or damage to property or for personal injury . . . resulting from the operation by such employee of any vehicle *if it be alleged in the complaint* . . . that the employee was acting within the scope of his office or employment[.]" D.C. Code § 2-415(a) (emphasis added). Here, Mr. Coleman's complaint specifically alleges that Professor Clark was "driving the vehicle as aforesaid within the scope of her employment with, and agency for the Defendant Purdue University, by carrying out her job duties assigned by her employer." Compl. ¶ 16, ECF No. 1-1 at 9; *see also id.* ¶ 17 ("At the time of the said collision, Defendant, Clark, was driving the said vehicle as aforesaid with

the knowledge, consent and permission [of], Defendant, Purdue University."); *id.* ¶ 18 (alleging injuries were caused by "Clark, while carrying out his [sic] job duties assigned by his [sic] employer and while furthering the interests of Defendant Purdue University"). In fact, defendants expressly concede that Professor Clark was acting within the scope of her employment at the time of the accident. *See* Defs.' Reply, ECF No. 19 at 28. Accordingly, by all accounts, Professor Clark was acting within the scope of her employment at the time of the accident, and therefore the claim against her must be dismissed under the plain language of the statute.

In his opposition, plaintiff disavows these allegations in his complaint and seeks leave to amend his complaint "to plead that Defendant Clark was acting outside the scope of her employment so that discovery can be done on that issue." Pl.'s Opp., ECF No. 14 at 19-21. Although the Court must "freely give leave" to amend a complaint "when justice so requires," Fed. R. Civ. P. 15(a), plaintiff's request here appears to be "a transparent attempt by plaintiff to amend his pleading in order to avoid a dispositive defense." *Colliton v. Cravath, Swaine & Moore LLP*, No. 08-0400, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008). As another court explained in rejecting a plaintiff's attempt to "retreat from his assertion" that the defendant was acting "within the scope of his employment, "[w]here a plaintiff

blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true." *Rishikof v. Mortada*, 70 F. Supp. 3d 8, 14 (D.D.C. 2014) (citation and internal quotation marks omitted, alterations accepted). Here, the Court rejects Mr. Coleman's attempt to circumvent the clear allegations in his complaint in response to the defendants' dispositive motion. Accordingly, the Court denies plaintiff's request to amend his complaint to add allegations that would directly contradict the allegations in his original complaint.

## IV. CONCLUSION

For the reasons set forth in this Memorandum Opinion, the defendants' motion to dismiss plaintiff's complaint is **GRANTED**. A separate Order accompanies this Opinion.

**SO ORDERED.**

**Signed:**     **Emmet G. Sullivan**
                  **United States District Judge**
                  **July 20, 2018**